# United States Court of Appeals
## For the First Circuit

No. 14-2151

IN RE KEVIN CHARBONO,

Debtor.

_____

KEVIN CHARBONO,

Appellant,

v.

LAWRENCE P. SUMSKI, Trustee,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]
[Hon. J. Michael Deasy, U.S. Bankruptcy Judge]

Before

Howard, Selya and Kayatta,
Circuit Judges.

Michelle Kainen, with whom Kainen Law Office, PC was on brief,
for appellant.
Tara Twomey, Ray DiGuiseppe, and National Consumer Bankruptcy
Rights Center on brief for National Association of Consumer
Bankruptcy Attorneys, amicus curiae.

Lawrence P. Sumski for appellee.

———————————

June 15, 2015

———————————

**SELYA**, **Circuit Judge**.  This appeal poses the question of whether a bankruptcy court has inherent power to sanction parties for noncompliance with court orders.  We hold that it does — and we reject the debtor's attempt to subsume this power within the bankruptcy court's authority to punish for criminal contempt.  After placing the sanction imposed by the bankruptcy court in perspective, we conclude that the district court did not err in upholding it.

## I.    BACKGROUND

Facing straitened circumstances, Kevin Charbono (the debtor) filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.  See 11 U.S.C. §§ 1301-1330.  The bankruptcy court appointed Lawrence P. Sumski as Trustee, and the court confirmed the debtor's Chapter 13 plan (the Plan) on August 21, 2012.

The Plan was filed using the standard form, see Bankr. D.N.H. LBR 3015-1; Bankr. D.N.H. LBF 3015-1A, which contains a tax return production requirement that makes pellucid the debtor's "ongoing obligation to provide a copy of each federal income tax return (or any request for extension) directly to the Trustee within seven days of the filing of the return (or any request for extension) with the taxing authority."  The bankruptcy court's decree confirming the Plan incorporated the

tax return production requirement and, thus, that requirement became an order of the court.  See 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor . . . .").

The debtor's 2012 federal income tax return was due April 15, 2013.  See 26 C.F.R. § 1.6072-1(a)(1).  In January, the Trustee sent the debtor a letter reminding him of his obligation to furnish a copy of his return or any request for extension of the filing date within the time parameters specified in the Plan.  As April 15 approached, the debtor's wife, acting on his behalf and with his knowledge, filed a request for an extension of the filing deadline with the Internal Revenue Service.  A copy of this extension request was not provided to the Trustee within the mandated seven-day period.

Not having received a copy of either the debtor's tax return or an extension request, the Trustee filed a motion on June 13 alerting the bankruptcy court to the debtor's failure to comply with the tax return production requirement.  The Trustee's motion sought alternative relief: dismissal of the Chapter 13 bankruptcy or a $200 sanction.  The debtor objected and belatedly furnished the Trustee with a copy of the by-then-approved extension request.

When the matter was heard before the bankruptcy court on September 20, the Trustee did not press for dismissal.[1]  He argued instead that the debtor's untimely compliance with the tax return production requirement was "sanctionable behavior." The debtor countered that no sanction was warranted because he had by then "purged" his noncompliance.

On September 24, the bankruptcy court entered an order imposing a $100 sanction on the debtor for his failure to comply with the tax return production requirement in a timeous manner.  The debtor took a first-tier appeal to the district court.  See 28 U.S.C. § 158(a), (c)(1).  That court upheld the sanction.  See Charbono v. Sumski, No. 13-471, 2014 WL 4922988, at *5 (D.N.H. Sept. 30, 2014).  This timely second-tier appeal followed.

## II.  ANALYSIS

Bankruptcy court orders are subject to two tiers of intermediate appellate review.  The first tier is through an appeal either to the Bankruptcy Appellate Panel or to the district court.  See 28 U.S.C. § 158(a), (c).  A second-tier appeal thereafter lies to the court of appeals.  See

---

[1] The extension ran until October 15, 2013.  Accordingly, the debtor was in compliance with the tax return production requirement at the time of the hearing.

- 5 -

id. §§ 158(d)(1), 1291. Because the second-tier appeal involves de novo review of the district court's decision, our review is in effect direct review of the bankruptcy court's order. See Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC), 642 F.3d 263, 265 (1st Cir. 2011); HSBC Bank USA v. Branch (In re Bank of New Eng. Corp.), 364 F.3d 355, 361 (1st Cir. 2004).

A bankruptcy court's imposition of a sanction typically embodies a judgment call, and, thus, review is for abuse of discretion. See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 403 (1st Cir. 2002); see also Gannett v. Carp (In re Carp), 340 F.3d 15, 23 (1st Cir. 2003). This standard, though generally deferential, is not monolithic. For example, a material error of law is invariably an abuse of discretion. See Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 68 (1st Cir. 2012). Accordingly, if a bankruptcy court lacks the authority to impose a particular sanction, the imposition of such a sanction will constitute an error of law and, thus, demand reversal. See Jamo, 283 F.3d at 403-04.

Before us, the debtor questions the bankruptcy court's authority to impose the challenged sanction, the process by which the sanction was levied, and the selection of the sanction itself. We address these matters sequentially.

- 6 -

## A.    The Bankruptcy Court's Authority.

The debtor first posits that the challenged sanction is tantamount to a fine for criminal contempt. That fine, he asserts, was beyond the bankruptcy court's authority for two reasons: as a jurisdictional matter and as a result of the court's noncompliance with the procedural prerequisites for such a fine.[2]  But the premise on which this binary assertion rests mischaracterizes the bankruptcy court's action.  While the challenged sanction shares certain features of a criminal contempt fine — after all, the sanction is punitive (that is, one imposed to vindicate the authority of the court) rather than coercive (that is, one imposed to force compliance with a court order) — a criminal contempt fine is not the only type of punitive sanction that lies within a court's armamentarium.

In United States v. Kouri-Perez, we explicitly renounced the proposition that any punitive sanction is perforce a criminal contempt sanction.  187 F.3d 1, 8-9 (1st Cir. 1999).  We recognized that a district court may, in appropriate circumstances, impose "punitive non-contempt

_____

[2] A fine for criminal contempt may only be imposed in conformity with the requirements of Federal Rule of Criminal Procedure 42.  See United States v. Burgos-Andújar, 275 F.3d 23, 31 (1st Cir. 2001).  The bankruptcy court made no effort to satisfy these prerequisites.

sanctions." See id. at 7. In other words, the contempt power is merely one of many inherent powers that a court possesses; it is not the only type of inherent power that can be deployed. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) (describing the power to punish for contempt as one of multiple inherent powers of the courts arising out of courts' authority to manage their own affairs); United States v. Pina, 844 F.2d 1, 14 (1st Cir. 1988) (noting that the "contempt power . . . is not the only weapon available to a judge to protect the order and dignity of the courtroom"). The authority to issue a punitive sanction also may reside in "a court's inherent power to police itself, thus . . . 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court.'" Chambers, 501 U.S. at 46 (second alteration in original) (quoting Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978)). Exercising this authority, courts may levy sanctions (including punitive sanctions) for such varied purposes as disciplining attorneys, remedying fraud on the court, and preventing the disruption of ongoing proceedings. See id. at 43-44 (collecting cases).

The courts of appeals, too, have recognized the authority of federal courts to impose inherent-power sanctions without a finding of contempt. See, e.g., Mark Indus., Ltd.

- 8 -

v. Sea Captain's Choice, Inc., 50 F.3d 730, 733 (9th Cir. 1995) (explaining that a non-contempt inherent-power sanction can be employed to vindicate a court's authority); Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir. 1993) (approving imposition of a non-contempt monetary sanction as within district court's inherent powers). Indeed, such a principle is part of the warp and woof of this court's jurisprudence. See, e.g., United States v. Romero-López, 661 F.3d 106, 108 (1st Cir. 2011); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989).

For ease in exposition, we will from this point forward use the term "inherent-power sanction" as a shorthand for a non-contempt inherent-power sanction. Factors relevant in distinguishing between contempt sanctions and inherent-power sanctions include whether the issuing court made an express finding of contempt, whether the underlying conduct evinces a criminal mens rea, and whether the order falls within a recognized inherent power of the court (other than the contempt power). See Romero-López, 661 F.3d at 108; Kouri-Perez, 187 F.3d at 8-9. Here, these factors point unerringly to the conclusion that the bankruptcy court's ukase, though punitive, was an inherent-power sanction. The bankruptcy court not only made no finding of contempt but also expressly disavowed any notion that its order was meant to be a criminal sanction.

What is more, the court acknowledged that the debtor's delayed compliance was not the product of any malign intent. Last — but far from least — the $100 impost fell squarely within the long-recognized authority of courts to "impose . . . submission to their lawful mandates." Chambers, 501 U.S. at 43 (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227 (1821)). We conclude, therefore, that the bankruptcy court imposed a garden variety inherent-power sanction, not a criminal contempt sanction.

The question remains whether a bankruptcy court, like other federal courts, has the authority to impose punitive non-contempt sanctions. The debtor argues that because bankruptcy courts are creatures of statute and have limited jurisdiction, they lack the inherent power to issue such sanctions. We reject this crabbed view.

To begin, the Supreme Court has implied that bankruptcy courts possess inherent sanctioning powers beyond those expressly authorized by statute or rule. See Law v. Siegel, 134 S. Ct. 1188, 1198 (2014); see also Marrama v. Citizens Bank of Mass., 549 U.S. 365, 375-76 (2007). This acknowledgment dovetails with Chambers, in which the Court explained that by the very nature of their institution, all courts are "necessarily vested" with the inherent power

required to carry out their judicial functions to "achieve the orderly and expeditious disposition of cases." 501 U.S. at 43 (internal quotation mark omitted). The Chambers Court stated that even though a district court's inherent power "can be limited by statute and rule," it would not "lightly assume that Congress . . . intended to depart from established principles such as the scope of a court's inherent power." Id. at 47 (internal quotation mark omitted). This reasoning readily can be applied to bankruptcy courts, which by the nature of their institution must possess inherent power sufficient to "manage their own affairs" and "impose . . . submission to their lawful mandates." Id. at 43 (internal quotation marks omitted).

The proof of the pudding is in the case law. The courts of appeals consistently have recognized that bankruptcy courts may impose various forms of inherent-power sanctions. See, e.g., Isaacson v. Manty, 721 F.3d 533, 538-39 (8th Cir. 2013); McGahren v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1171 (4th Cir. 1997); Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477-78 (6th Cir. 1996); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1996); Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. 1995); Fellheimer, Eichen & Braverman, P.C. v. Charter Techs.,

<u>Inc.</u>, 57 F.3d 1215, 1224 (3d Cir. 1995); <u>Citizens Bank & Trust Co.</u> v. <u>Case</u> (<u>In re Case</u>), 937 F.2d 1014, 1023 (5th Cir. 1991). Our court has joined in this chorus. <u>See</u> <u>Pearson</u> v. <u>First NH Mortg. Corp.</u>, 200 F.3d 30, 42 n.7 (1st Cir. 1999). We therefore hold, without serious question, that bankruptcy courts possess the inherent power to impose punitive non-contempt sanctions for failures to comply with their orders.

There is one loose end. The parties agree that the debtor's failure to comply with the tax return production requirement was inadvertent and did not exhibit bad faith. With this in mind, a colloquy ensued at oral argument in this court about whether a finding of bad faith was a prerequisite for the imposition of an inherent-power sanction.

This argument is procedurally defaulted several times over. The debtor did not advance it in the bankruptcy court, in the district court, or in his briefing before this court. Consequently, the argument has not been preserved. <u>See</u> <u>Limone</u> v. <u>United States</u>, 579 F.3d 79, 100 n.11 (1st Cir. 2009).

Even if we assume, favorably to the debtor, that the argument was forfeited rather than waived, <u>see</u> <u>United States</u> v. <u>Rodriguez</u>, 311 F.3d 435, 437 (1st Cir. 2002) (discussing distinction between waiver and forfeiture), the challenged sanction would still stand. The argument for a bad-faith

requirement prescinds from the Supreme Court's review of an inherent-power sanction <u>in the form of an award of attorneys' fees</u>. <u>See</u> <u>Roadway Express, Inc.</u> v. <u>Piper</u>, 447 U.S. 752, 767 (1980). The <u>Roadway Express</u> Court noted that "a finding [of bad faith] would have to precede any sanction under the court's inherent powers." <u>Id.</u> The Supreme Court later clarified this holding explaining that "nothing in the other sanctioning mechanisms or prior cases . . . warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power <u>to impose attorney's fees as a sanction for bad-faith conduct.</u>" <u>Chambers</u>, 501 U.S. at 50 (emphasis supplied).

For the most part, the courts of appeals have read these precedents narrowly, limiting them to instances in which an inherent-power sanction takes the form of an award of attorneys' fees.[3] <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Seltzer</u>, 227 F.3d 36, 41-42 (2d Cir. 2000); <u>Republic of the Philippines</u> v. <u>Westinghouse Elec. Corp.</u>, 43 F.3d 65, 74 n.11 (3d Cir. 1994); <u>Harlan</u>, 982 F.2d at 1260. This limitation makes eminently good

---

[3] The Fifth Circuit is an outlier. <u>See</u>, <u>e.g.</u>, <u>In re Thalheim</u>, 853 F.2d 383, 389 (5th Cir. 1988). Even that court has acknowledged that its expansive application of the bad-faith requirement may be open to question. <u>See</u> <u>Elliott</u> v. <u>Tilton</u>, 64 F.3d 213, 217 n.3 (5th Cir. 1995). In any event, we join the majority of our sister circuits in rejecting the Fifth Circuit's more sweeping use of the bad-faith requirement.

- 13 -

sense.  The Roadway Express Court's reasoning took into account the venerable "American Rule," which provides that litigants ordinarily shall pay their own lawyers. See Roadway Express, 447 U.S. at 765-66; see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975).  Where an inherent-power sanction has the effect of reversing this rule, that sanction demands heightened justification.  See Roadway Express, 447 U.S. at 765-66.  But where an inherent-power sanction does not take the form of an award of attorneys' fees (and thus does not involve a departure from the American Rule), a finding of bad faith is not ordinarily required.  See Seltzer, 227 F.3d at 40-42; United States v. Mottweiler, 82 F.3d 769, 772 (7th Cir. 1996); Harlan, 982 F.2d at 1260; Mulvaney v. Rivair Flying Serv., Inc. (In re Baker), 744 F.2d 1438, 1441-42 (10th Cir. 1984) (en banc); see also Romero-López, 661 F.3d at 108 (affirming imposition of inherent-power sanction, not in form of fee award, without requiring showing of bad faith); Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 447 (1st Cir. 1997) (same).  It follows that the absence of bad faith does not serve to undermine the inherent-power sanction imposed by the bankruptcy court.

Of course, the absence of a bad faith requirement should not be thought to give the bankruptcy court free reign

to impose sanctions without restraint. The admonition that "courts [are] to be cautious in using their inherent power to sanction" remains true. See Romero-López, 661 F.3d at 108 (citing Chambers, 501 U.S. at 44). Here, however, we are satisfied that the bankruptcy court, in choosing this modest sanction (rather than, say, dismissing the Chapter 13 proceeding in its entirety), opted for "the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes." Kouri-Perez, 187 F.3d at 8.

## B. Due Process.

It is common ground that a court's inherent powers must be exercised circumspectly and with particular regard for due process protections. See Roadway Express, 447 U.S. at 767; United States v. Horn, 29 F.3d 754, 760 (1st Cir. 1994); Boettcher v. Hartford Ins. Grp., 927 F.2d 23, 26 (1st Cir. 1991). These protections include notice and the opportunity to be heard. See Roadway Express, 447 U.S. at 767. Against this backdrop, the debtor claims that the bankruptcy court transgressed his due process rights by failing to provide notice of what he describes as the court's "uniform policy" of imposing a monetary sanction for noncompliance with the tax return production requirement.

The lack-of-notice claim is empty. "Notice can come from the party seeking sanctions, from the court, or from both." Glatter, 65 F.3d at 1575. Here, the Trustee's motion made plain that the Trustee was seeking a monetary sanction as an alternative to dismissal of the bankruptcy proceeding.

So, too, the debtor had a full opportunity to be heard. His counsel filed a written objection to the Trustee's motion and appeared with the debtor at a hearing that aired a host of arguments. No more was exigible to safeguard the debtor's right to fundamental fairness. See Jensen v. Phillips Screw Co., 546 F.3d 59, 65 (1st Cir. 2008); HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 & n.14 (1st Cir. 1988).

The debtor nonetheless suggests that the bankruptcy court was following a policy that was the functional equivalent of a local rule, promulgated without heed to customary rulemaking procedures. See Fed. R. Civ. P. 83(a)(1); Fed. R. Bankr. P. 9029(a)(1). Building on this foundation, the debtor complains that he had no way to know in advance that his violation of the tax return production requirement could result in a monetary sanction.

We agree, of course, that courts should provide notice prior to attempting to enforce new rules. See Weisburgh

v. Fidelity Magellan Fund (In re Fidelity/Micron Sec. Litig.),
167 F.3d 735, 737 n.1 (1st Cir. 1999).  We have encouraged
district courts "to avoid incipient problems of this type by
incorporating standing orders into local rules, or, at least,
making them readily available in the office of the Clerk."  Id.
Here, however, there was no standing order.  Although the
bankruptcy court did refer to a "policy" of imposing sanctions,
the court was merely noting its usual practice.[4]  The fact that
a court's approach to a particular type of situation is
predictable or is referred to as a "policy" does not, without
more, make it the sort of unwritten rule that requires formal
adoption.

What remains of the debtor's lack-of-notice argument
is foreclosed by our decision in Zebrowski v. Hanna, 973 F.2d
1001 (1st Cir. 1992).  There, the plaintiffs were sanctioned
for noncompliance with a court order requiring payment into an
escrow account.  See id. at 1001-02.  We rejected the
plaintiffs' lack-of-notice argument, concluding that they could
not complain about a lack of notice vis-à-vis the possibility

---

[4] The transcript of the hearing discloses that the
bankruptcy court mentioned a "policy" only in reference to its
aspirational goal of treating similarly situated debtors even-
handedly.  The court said that if it "is going to have a policy
to enforce provisions of confirmation orders," it would "have
to apply [that policy] with a reasonable degree of uniformity."

- 17 -

of sanctions since they were indisputably on notice that the failure to fund the escrow was in direct contravention of a court order. See id. at 1007 (distinguishing Boettcher, 927 F.2d at 26).

## C.     **Appropriateness of the Sanction.**

The debtor submits that the bankruptcy court abused its discretion by imposing a $100 sanction without adequate regard for the debtor's specific circumstances. These include the debtor's eventual compliance with the tax return production requirement, his good faith, his impecuniousness, and his manifest difficulties in managing his affairs.

When a court confronts a violation of its own order, "it may choose from a broad universe of possible sanctions." Velázquez Linares v. United States, 546 F.3d 710, 711 (1st Cir. 2008) (internal quotation marks omitted). In exercising this considerable discretion, however, the court must give "individualized consideration to the particular circumstances," id., and "balance a myriad of factors," Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). In turn, our review of an imposed sanction for abuse of discretion requires that we evaluate whether "a material factor deserving significant weight was ignored, whether an improper factor was relied upon, or whether when all proper and no improper factors were assessed[,] the

court made a serious mistake in weighing them." <u>United States</u>

v. <u>One 1987 BMW 325</u>, 985 F.2d 655, 657-58 (1st Cir. 1993)

(alterations and internal quotation marks omitted).

The record shows beyond any hope of contradiction that the bankruptcy court paid attention to the debtor's individual circumstances in selecting a sanction. The court acknowledged that the debtor, by the time of the hearing, had complied (albeit belatedly) with the tax return production requirement and that his initial noncompliance was inadvertent and not driven by a desire to withhold information from the Trustee. The court further acknowledged that the debtor was unlikely to receive a tax refund for the calendar year 2012, so the delay did not have the effect of withholding funds from creditors.

Similarly, the court factored into the equation the debtor's "dire straits." Although the court ultimately concluded that a sanction was warranted to send a message to the debtor and others regarding the importance of timely compliance with the tax return production requirement,[5] it

---

[5] The bankruptcy court explained that certain basic requirements must be met in order to receive the benefit of the Chapter 13 process. It ranked the tax return production requirement among those obligations. And the court said that this debtor — like others similarly situated — must face some consequence for noncompliance.

exhibited some flexibility and invited the debtor to suggest an alternative sanction. In the end, the court halved the $200 sanction requested by the Trustee because the debtor had a cash-flow problem. For this same reason, the court made the sanction payable on January 15, 2014 — more than three months after the date of the order. In light of the court's careful assessment of the full range of circumstances, we cannot say that the challenged sanction fell outside the wide encincture of its discretion.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we reject the debtor's challenge to the sanction.

**Affirmed.**