# United States Court of Appeals
## For the First Circuit

No. 17-1984

IN RE: STEVEN FUSTOLO,
Debtor.

_____

STEVEN FUSTOLO,

Appellant,

v.

THE PATRIOT GROUP LLC,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Martin P. Desmery, with whom Travis J. McDermott and Partridge Snow & Hahn, LLP were on brief, for appellant.
Jack I. Siegal, with whom Gordon & Rees Scully Mansukhani was on brief, for appellee.

July 16, 2018

**TORRUELLA, Circuit Judge.** Following trial on The Patriot Group, LLC's ("Patriot") adversary complaint requesting denial of the discharge in bankruptcy of Steven Fustolo's ("Fustolo") debt, the bankruptcy court allowed Patriot's motion to amend its pleadings and denied Fustolo's discharge pursuant to the newly added claim. Fustolo seeks reprieve from his encumbrance, imploring us to reverse the bankruptcy court's judgment and remand the case for reconsideration in light of the issues pleaded in Patriot's complaint. Because we find that the allowance of this belated amendment fails to satisfy the prescripts of due process underlying Rule 15(b)(2) and was therefore an abuse of discretion, we grant Fustolo's request.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We begin by charting the course of this case, as supportably summarized by the district court and undisputed by the parties. See Fustolo v. The Patriot Group, LLC (In re Fustolo), No. 17-cv-10128-LTS, 2017 WL 3896667, at *1-5 (D. Mass. Sept. 6, 2017). After obtaining a $20.5 million dollar judgment against Fustolo from the Massachusetts Superior Court two years earlier, Patriot and two other petitioning creditors filed a contested involuntary petition for relief under Chapter 7 of the Bankruptcy Code in May 2013 against Fustolo. On December 16, 2013, the bankruptcy court allowed the petition for relief. In re Fustolo,

-2-

503 B.R. 206 (Bankr. D. Mass. 2013), aff'd, Fustolo v. 50 Thomas Patton Drive, LLC, 816 F.3d 1 (1st Cir. 2016).

On September 30, 2014, Patriot and another petitioning creditor filed an adversary complaint requesting denial of Fustolo's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), (a)(5), and, in the alternative, that the court declare Fustolo's debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4). Among other things, the complaint alleged that Fustolo engaged in fraudulent transactions as to both creditors; deliberately created a corporate web to conceal fraudulent activities; made substantial pre-petition transfers to his wife; made unexplained cash transactions within one year of the involuntary petition; made substantial transfers to insiders and affiliates; concealed, destroyed, or failed to keep business records from which the creditors could ascertain the financial condition of Fustolo's business transactions; and made false statements during bankruptcy.

In November 2015, Patriot filed a motion to compel Fustolo to provide emails and financial records that Patriot alleged were being wrongfully withheld. In a contested hearing on Patriot's motion, Fustolo argued that his emails had been deleted by his email account provider and were therefore

irretrievable, and that, in any event, many of them were protected from production by the Fifth Amendment's right against self-incrimination.[1]

On December 31, 2015, the bankruptcy court issued an order (the "December 31 Order") for Fustolo to produce non-privileged emails and financial account statements to Patriot, and in consideration of Fustolo's Fifth Amendment rights, to "provide the Court for its in camera inspection only . . . copies of all emails and documents he asserts are protected under the Fifth Amendment, along with two separate item by item indexes" (the "Protocol"). The bankruptcy court stated that it would determine whether the privilege had been properly invoked, and added that submission of the emails and financial statements "shall not constitute a waiver of [Fustolo's] Constitutional right against self-incrimination." In the court's accompanying memorandum, it noted that Fustolo's contention about the email provider's deletion of emails was "devoid of merit," and that if Fustolo was "unable to produce emails, it can only mean that he deleted them." 50 Patton Drive, LLC v. Fustolo (In re Fustolo), No. 13-12692-JNF, 2015 WL 9595421, at *4 (Bankr. D. Mass. Dec. 31, 2015).

---

[1] In 2015, Patriot initiated an investigation of Fustolo, which led the Massachusetts Attorney General to file a criminal matter against Fustolo in the Massachusetts state court.

-4-

After being granted two extensions of time to comply with the December 31 Order, on February 5, 2016, Fustolo filed a motion to impound submission regarding his assertion of the Fifth Amendment, in which he stated that he was not complying with the December 31 Order by refusing to submit emails. Patriot subsequently filed a motion for sanctions against Fustolo pursuant to Fed. R. Civ. P. 37 for failing to comply with the December 31 Order and for alleged email spoliation. The bankruptcy court held a hearing on Patriot's motion on March 17, 2016,[2] at which Patriot requested as sanctions: that the bankruptcy court set an expeditious trial date; that Fustolo be required to submit to a deposition; and an order that Patriot was "not going to get dumped on with emails on the eve of trial." In response, Fustolo again responded that production of emails and documents for in camera inspection would violate his Fifth Amendment rights in light of the "overriding concern that [the bankruptcy court] is the finder of fact in this case." The court made clear at the hearing that it had "gone to great lengths to protect Mr. Fustolo's right to invoke the Fifth Amendment," but that Fustolo had "refused to comply . . . without legitimate reason." In addition, the court

---

[2] While the transcript of this hearing and Patriot's appellate brief reflect the date of this hearing as March 17, 2015, Patriot's motion for sanctions was filed on February 16, 2016, and the docket reflects the hearing took place on March 17, 2016.

found that Fustolo failed to comply with the December 31 Order by deleting emails that he had not claimed to be privileged or refusing to provide them to Patriot, and by failing to comply with the Protocol.  See id.  Accordingly, the court granted Patriot's motion for sanctions, prohibited Fustolo from presenting any emails not previously produced, and scheduled the trial to commence on May 23, 2016.

During his deposition, Fustolo provided to Patriot paper print outs of what he claimed were his "books and records," but refused to produce the electronic spreadsheets from which the information was derived, repeatedly invoking the Fifth Amendment right against self-incrimination.  Fustolo further invoked his Fifth Amendment right when asked if he intentionally deleted his electronic spreadsheets.  On May 10, 2016, Patriot again moved for sanctions pursuant to Fed. R. Civ. P. 37, seeking a pretrial ruling that Fustolo had spoliated the electronic financial records, and a court order barring Fustolo from introducing into evidence any documents or financial records not produced in their original electronic format.  On May 18, 2016, the bankruptcy court granted Patriot's motion in part and denied it in part, prohibiting Fustolo from introducing any evidence not provided prior to his deposition, but refraining from making a finding as to whether Fustolo intentionally spoliated his books and records.

In a Joint Pretrial Memorandum ("JPM"), Patriot included "Fustolo's discovery misconduct in this proceeding, including but not limited to Fustolo's spoliation of evidence" among its "fact issues for trial." Fustolo did not file an objection to the inclusion of this issue. Three days before trial, Patriot filed a request for the bankruptcy court to take judicial notice of several documents, including: 1) the December 31 Order; 2) the December 31 accompanying memorandum; 3) the transcript of the March 17, 2016 hearing; 4) the court's May 18, 2016 order on Patriot's motion for a spoliation inference. The court allowed the request with no objection from Fustolo.

Trial started on May 23, 2016. The court began by reciting the allegations in the complaint: that Patriot had an objection to discharge of Fustolo's debt under 11 U.S.C. § 727(a)(2)(A) as Count I, § 727 (a)(2)(B) as Count II, § 727 (a)(3) as Count III, § 727 (a)(4) as Count IV, and § 727 (a)(5) as Count V; and that Patriot further alleged that Fustolo's debt was non-dischargeable under § 523(a)(2)(A) as Count VIII.[3] The parties confirmed that there were no amendments. In Patriot's opening statement, Patriot's counsel offered that the evidence would "show that Mr. Fustolo ha[d] repeatedly abused the

---

[3] Counts VI and VII related to claims by another creditor that previously dismissed its claims against Fustolo.

bankruptcy process, violated this Court's orders, [and] failed to preserve evidence." The bankruptcy court immediately asked whether Patriot had a claim under § 727(a)(6), and counsel stated that Patriot did not.

On June 14, 2016, the fourth of six days of trial, during Fustolo's testimony, Patriot's counsel questioned him about his compliance with the December 31 Order. The following exchange took place:

> COUNSEL: In December of 2015 the Court entered an order in which you were to provide the Court in camera documents that you contend you were withholding based on the Fifth Amendment privilege. Do you recall that?
>
> FUSTOLO: I do, yes.
>
> COUNSEL: You never produced those documents to the Court, did you?
>
> FUSTOLO: My attorney supplied them to the Court, yes.
>
> COUNSEL: I don't believe that you followed – there was a protocol that you were supposed to follow in terms of providing documents withheld on Fifth Amendment grounds, as well as a log of documents. Sir, do you know whether you complied with that order?
>
> FUSTOLO: Sir, I relied on my counsel who believed that – that compliance had been adhered to.

. . .

-8-

```
COUNSEL:      Are you telling the Court right now under
              oath that you supplied all the documents
              withheld on the Fifth Amendment privilege
              to the Court?

FUSTOLO:      Sir, I relied on my counsel for that, so
              whatever they said we complied with, we
              complied with.
```

At no point did Fustolo's trial counsel object to any of these questions. Moreover, Fustolo's counsel did not address the December 31 Order during his cross-examination of Fustolo. At the close of evidence, the bankruptcy court requested that the parties submit post-trial briefs in lieu of closing arguments, structuring their briefs "along the lines of the claims for relief that are set forth in the counts on the plaintiff's complaint." The court again read aloud the counts in Patriot's complaint, and gave the parties approximately two months to submit their post-trial briefs.

Both parties filed their post-trial briefs on August 26, 2016. In the last pages of Patriot's brief, it moved to amend its complaint to conform to the evidence presented at trial pursuant to Fed. R. Civ. P. 15(b)(2), requesting to include a claim under § 727(a)(6) based on Fustolo's violation of the December 31 Order. Patriot identified several instances that it argued should constitute Fustolo's implied consent to litigate the additional claim, including Fustolo's failure to object to: Patriot's inclusion of "Fustolo's discovery misconduct" as an issue for trial

in the JPM; Patriot's request for judicial notice of the December 31 Order; and Fustolo's above-quoted testimony at trial. Patriot subsequently filed a Motion to Conform the Pleadings to the Evidence on September 12, 2016, and Fustolo filed his opposition on September 28.

On January 9, 2017, the bankruptcy court allowed Patriot's motion to conform and entered judgment in its favor and against Fustolo, denying Fustolo a discharge of his debt owed in bankruptcy under § 727(a)(6). The Patriot Group, LLC v. Fustolo (In re Fustolo), 563 B.R. 85 (Bankr. D. Mass. 2017). In light of its ruling as to the newly asserted claim, the bankruptcy court found the remaining counts of Patriot's complaint moot. Id. at 113.

On January 24, 2017, Fustolo filed his Notice of Appeal and Statement of Election to have his appeal of the bankruptcy court's January 9 order heard before the district court rather than the Bankruptcy Appellate Panel. The district court affirmed the bankruptcy court on September 6, 2017, and Fustolo timely appealed.

## II. THE UNPLEADED CLAIM

On appeal, Fustolo advances two arguments before this Court: that the bankruptcy court abused its discretion in granting Patriot leave to amend its complaint, and that § 727(a)(6) does

not apply to his assertion of his Fifth Amendment right against self-incrimination. The decision whether to grant or deny an amendment is within the discretion of the trial court, see Foman v. Davis, 371 U.S. 178, 182 (1962), and we review its determinations of implied consent for an abuse of that discretion, Premier Capital, LLC v. Crawford (In re Crawford), 841 F.3d 1, 6 (1st Cir. 2016). This standard is "generally deferential," although a "material error of law is invariably an abuse of discretion." Charbono v. Sumski (In re Charbono), 790 F.3d 80, 85 (1st Cir. 2015) (citing Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 68 (1st Cir. 2012)).

"Notwithstanding the fact that we are the second-in-time reviewers, we cede no special deference to the district court's determinations." In re Crawford, 841 F.3d at 6 (quoting Gannett v. Carp (In re Carp), 340 F.3d 15, 22 (1st Cir. 2003)). Accordingly, we directly review the bankruptcy court's order. In re Charbono, 790 F.3d at 84-85.

When engaging in our review, we keep in mind that "the district courts retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1171 (1st Cir. 1995) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989)). Further, while motions to amend a complaint to conform

-11-

to the evidence at trial are liberally allowed, Noonan v. Rauh (In re Rauh), 119 F.3d 46, 52 (1st Cir. 1997), such amendments must conform to the prescripts of due process, see Nelson v. Adams USA, Inc., 529 U.S. 460, 465 (2000).

We begin with a discussion of the applicable rule governing amendments of pleadings.

## A. Rule 15(b)(2)[4]

Rule 15(b)(2) states, in relevant part, that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." See Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 319 (1st Cir. 2012) ("Federal Rule of Civil Procedure 15(b) allows an unpleaded claim to be considered when the parties' conduct demonstrates their express or implied consent to litigate the claim."). As the record in this case shows no indication of Fustolo's express consent, nor do any parties so claim, we look only to whether Fustolo provided his implied consent.

Implied consent occurs by either "treating a claim introduced outside the complaint 'as having been pleaded, either through [the party's] effective engagement of the claim or through

---

[4] Federal Rule of Civil Procedure 15(b) is made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 7015. See In re Rauh, 119 F.2d at 52.

-12-

his silent acquiescence'; or by acquiescing during trial 'in the introduction of evidence which is relevant only to that issue.'" Id. (alteration in the original) (emphasis added) (quoting Doral Mortg., 57 F.3d at 1172); see also Conjugal P'ship of Jones v. Conjugal P'Ship of Pineda, 22 F.3d 391, 400-01 (1st Cir. 1994) ("One sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by opposing counsel." (quoting Matter of Prescott, 805 F.2d 719, 725 (7th Cir. 1986))).

Engagement or acquiescence to the litigation of an unpleaded claim may occur through a party's failure to object once it becomes clear that the asserted claim is being incorporated into the pleadings. See, e.g., Antilles Cement, 670 F.3d at 319-20 (finding that appellants "effectively conceded" that new claim had been "incorporated into the complaint" by discussing the claim at the first scheduling conference, failing to object to the claim's listing in the scheduling order, engaging in discovery pertaining to the new claim, briefing the issue, and arguing contesting the claims merits). However, "[t]he introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case." DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992), superseded on other grounds, as

recognized in Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 243 n.25 (1st Cir. 2010). It is "the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him," Doral Mortg., 57 F.3d at 1171, and thus "[i]t is not enough that an issue may be inferentially suggested by incidental evidence in the record; the record must demonstrate that the parties understood that the evidence was aimed at an unpleaded issue," Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. 1986); see also Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 232 (1st Cir. 2003) (citing Galindo for this proposition); Monod v. Futura, Inc., 415 F.2d 1170, 1174 (10th Cir. 1969) (stating that Rule 15(b) serves "to bring the pleadings in line with issues actually tried and does not permit amendment to include collateral issues which may find incidental support in the record").

Finally, while the court has the discretion to allow late amendments, it may do so only if the non-moving party will not suffer undue prejudice. Campana v. Eller, 755 F.2d 212, 215 (1st Cir. 1985); see also In re Rauh, 119 F.3d at 52 (amendment should not be allowed if opposing party demonstrates "unfair prejudice" (citing DCPB, 957 F.2d at 917)); DCPB, 957 F.2d at 917 ("It is axiomatic that amendments which unfairly prejudice a litigant should not be granted."). "At a bare minimum . . . a

-14-

defendant must be afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." Doral Mortg., 57 F.3d at 1172. Lack of prejudice, however, does not "compel a determination that the amendment is appropriate." Kenda Corp., 329 F.3d at 232 (quoting United States v. Davis, 261 F.3d 1, 59 (1st Cir. 2001)).

**B. The January 9, 2017 Order**

We refocus our lens on the plaint before us. Amongst the claims that Patriot pleaded in its complaint were requests for denial of discharge of Fustolo's debt under 11 U.S.C. § 727(a)(3), which allows for a denial when a debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained," and 11 U.S.C. § 727(a)(4), which allows for denial if a debtor has "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." In its motion to conform, Patriot requested that the bankruptcy court allow it to assert a claim and obtain a judgment against Fustolo under 11 U.S.C. § 727(a)(6), which provides for denial of discharge of a "debtor [that] has refused, in the case . . . to obey any lawful order of the court, other than to respond to a material question or to testify."

As previously noted, the bankruptcy court allowed Patriot's request for amendment and judgment on the unpleaded claim, finding that Fustolo had been put on notice of a possible § 727(a)(6) claim prior to trial, and that the unpleaded claim was foreseeable as early as March 17, 2016. In re Fustolo, 563 B.R. at 106-08. The court reasoned that Fustolo "impliedly consented to the litigation of the unpleaded § 727(a)(6)(A) claim" by filing the JPM, and "through his silent acquiescence and failure to object to the introduction of evidence directly relevant to that claim." Id. at 106, 108. According to the court, Fustolo's acceptance occurred through: 1) the inclusion of the "discovery misconduct" issue in the JPM; 2) his failure to object to the court taking judicial notice of the December 31 Order and accompanying memorandum, and the transcript of the March 17, 2016 hearing; and, 3) his acquiescence to Patriot's line of questioning about the December 31 Order. Id. at 108. The court also found the introduction of the December 31 Order, the accompanying memorandum, the March 17, 2016 hearing transcript, and Patriot's questioning of Fustolo were all "more strongly relevant" to a § 727(a)(6)(A) claim than alternative explanations offered by Fustolo. Id. (citing Haught v. Maceluch, 681 F.2d 291, 305 (5th Cir. 1982)).

-16-

Further, while acknowledging the belated timing of Patriot's motion to conform, the bankruptcy court pointed out that Patriot raised the issue in its post-trial brief, and that Rule 15(b)(2) allows for amendments to pleadings "at any time, even after judgment." Id. at 108-09 (quoting Fed. R. Civ. P. 15(b)(2)) (quotation marks omitted). The court next found that Fustolo would not suffer any undue prejudice as he "had a full and fair opportunity to address his compliance with the December 31st Order at trial," and because the court could not imagine "what additional evidence Fustolo could offer" as to this claim. Id. at 109. Finally, after conducting an analysis under § 727(a)(6), the bankruptcy court concluded that Patriot had "show[n] by a preponderance of the evidence that Fustolo willfully and intentionally refused to obey a lawful order of this Court," which warranted denial of his discharge. Id. at 113.

In this appeal, Fustolo disputes the contention that he was put on notice about a potential § 727(a)(6) claim, and argues that the pre-trial filings, Patriot's request for judicial notice, and his testimony all related to the existing § 727(a)(3) or § 727(a)(4) claims and ongoing discovery disputes. He avers that these pieces of evidence at most constituted "incidental evidence, which created nothing more than an inferential suggestion of a possible § 727(a)(6) claim." Fustolo faults the bankruptcy court

for utilizing the "most strongly relevant" test to find implied consent, and employing a "double standard" by imputing Fustolo's notice of a potential § 727(a)(6) claim in March 2016 while failing to require Patriot to justify its delayed amendment until September 2016. Patriot's delay, he claims, was unfairly prejudicial as it precluded him the opportunity to consider the need for additional evidence.

Patriot, on the other hand, maintains the accuracy of the bankruptcy court's discretionary decision, asserting that evidence of Fustolo's Protocol violation was relevant only to the unpleaded claim. Therefore, says Patriot, because Fustolo was on fair notice of the possible new claim and engaged on the merits at trial without objection, he impliedly consented to its addition. Patriot also contests any alleged prejudice to Fustolo as it posits that he had the opportunity to address the § 727(a)(6) claims, but simply failed to do so. As for why it waited until after trial to request amendment, Patriot points to discovery and trial preparation, and its desire to prevent Fustolo from seeking further postponement.

## C. Fair Notice

"Under the Civil Rules, notice of a claim is a defendant's entitlement, not a defendant's burden." Doral Mortg., 57 F.3d at 1172. When evidence presented is relevant to a claim

actually pleaded, and not solely to a new issue, the non-moving party is not provided adequate notice that the new claim is being litigated. See DCPB, 957 F.2d at 917. Simply put, one cannot give implied consent to litigate a claim for which he or she is not provided notice. See Nickless v. Conley (In re Byers), 312 B.R. 22, 25 (Bankr. D. Mass. 2004) ("The bounds of implied consent ensure that an opposing party receives fair notice of the claims against it which it must defend."); see also Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc., 117 F.3d 180, 193-94 (5th Cir. 1997) ("[T]rial of unpleaded issues by implied consent is not lightly to be inferred under Rule 15(b) . . . in light of the notice demands of procedural due process." (quoting Jiménez v. Tuna Vessel "GRANADA", 652 F.2d 415, 422 (5th Cir. Unit A July 1981)) (quotation marks omitted)).

The bankruptcy court found that Fustolo was put on notice of the infiltration of a § 727(a)(6)(A) claim in the JPM, through the court's allowance of the judicial notice request, during Patriot's opening statement, and when Patriot questioned him at trial. We disagree, and find that none of these instances clearly indicated Patriot's intention to litigate a § 727(a)(6) claim such that Fustolo could have "understood that the evidence was aimed at an unpleaded issue." Galindo, 793 F.2d at 1513; see also Doral Mortg., 57 F.3d at 1172. We explain our reasoning.

-19-

## 1. **The JPM**

The bankruptcy court found that including "discovery misconduct" as a factual issue for trial in the JPM "was a clear warning to Fustolo" that his failure to comply with the December 31 Order would be a triable issue. Fustolo, 563 B.R. at 107. But, the discovery misconduct alleged in the JPM included spoliation of evidence, relevant to and actionable under Patriot's § 727(a)(3) claim. Assuming "discovery misconduct" refers to Fustolo's refusal to provide Patriot non-privileged documents required by the December 31 Order, that contention was addressed at the March 17, 2016 hearing on Patriot's motion for sanctions, during which the bankruptcy court found it "inescapable that they have not been produced intentionally or have been deleted." Moreover, Patriot argued in its second Rule 37 motion -- filed only nine days prior to filing the JPM -- that Fustolo's invocation of the Fifth Amendment when asked to produce financial documents referenced in the December 31 Order should lead to an inference of spoliation. Thus, this "discovery misconduct" was relevant to whether Fustolo concealed, destroyed, or failed to preserve books and records under Patriot's existing § 727(a)(3) claim, and, because it was not solely relevant to the § 727(a)(6) claim, was insufficient for a finding of implied consent.

Patriot points to Fustolo's violation of the Protocol as an independent act of "discovery misconduct" at issue for which Fustolo was provided notice through the JPM. Apart from his refusal to turn over non-privileged documents, this violation involved Fustolo's failure to provide the court with emails and financial records that he asserted were shielded from production by the Fifth Amendment in order for the court to conduct an in camera inspection. Yet, this too cannot amount to adequate notice as this transgression also related to Patriot's § 727(a)(3) claim. At the March 17 hearing, the bankruptcy court announced its belief that Fustolo's defiance and "changes of position" as to why he was not providing emails were in "furtherance of a scheme to delay this litigation and legitimate discovery," and not as a result of the reasons that Fustolo previously stated to court. In its post-trial proposed findings of fact and conclusions of law, Patriot pointed to Fustolo's invocation of the Fifth Amendment privilege in relation to its § 727(a)(3) claim, and further argued that Fustolo's contrary representations about the emails supported an inference that he destroyed them. Additionally, the documents which Patriot alleges that Fustolo failed to provide to the bankruptcy court through his Protocol violation were the same documents that Patriot alleged were destroyed in its subsection (a)(3) claim.

At the very least, the statements in the JPM were sufficiently broad as to not reasonably be perceived as germane exclusively to a new § 727(a)(6) claim rather than a pleaded issue.

## 2. Request for Judicial Notice

Nor did Patriot's request for the court to take judicial notice of certain court documents provide adequate notice of the inclusion of a § 727(a)(6) claim. The bankruptcy court focused on Patriot's request for judicial notice of the December 31 Order and accompanying memorandum, and the transcript of the March 17, 2016 hearing, finding that they were "more strongly relevant to a § 727(a)(6)(A) claim than the theory espoused by Fustolo." Id. at 108. In the bankruptcy court's memorandum accompanying the December 31 Order, the court exclaimed its disbelief of Fustolo's contentions that his email provider deleted his emails, and laid out the underpinnings of a spoliation inference when it stated that "[i]f he is unable to produce emails, it can only mean that he deleted them." This, as well as the bankruptcy court's previously-mentioned "inescapable" conclusion at the March 17, 2016 hearing that Fustolo intentionally withheld or deleted emails are undoubtedly pertinent to Patriot's § 727(a)(3) claim, and Fustolo's presumed destruction of emails are actionable as such. Regardless of whether the evidence contained within the judicially-noticed items are "more strongly relevant" to a

-22-

§ 727(a)(6) claim, Haught, 681 F.2d at 305 (quoting Wallin v. Fuller, 476 F.2d 1204, 1210 (5th Cir. 1973)), they are not relevant only to such a claim, see DCPB, 957 F.2d at 917. Therefore, the failure to object to the request for judicial notice cannot constitute implied consent.

### 3. Patriot's Opening Statement

We turn next to Patriot's opening statement at trial, at which Patriot's counsel proclaimed that "the evidence will also show that Mr. Fustolo has repeatedly abused the bankruptcy process, violated this Court's orders, failed to preserve evidence and based on the totality of all of the evidence we will ask your Honor to deny Mr. Fustolo a discharge with prejudice." The bankruptcy court found that this statement, and the court's subsequent inquiry about the existence (or lack thereof) of a subsection (a)(6) claim put Fustolo "on notice at the very outset of the trial of the possibility of a § 727(a)(6)(A) claim." In re Fustolo, 563 B.R. at 106. Fustolo argued before the bankruptcy court that Patriot's denial of the existence of an (a)(6) claim constituted a waiver, an argument that the court rejected. See id.

Fustolo again raises this argument on appeal, adding for support Patriot's limited request for relief as sanctions for Fustolo's disobedience of the December 31 Order. We need not delve into the merits of this argument as we find that Patriot's

opening statement did not provide adequate notice of a trial on the failure-to-obey-a-lawful-court-order subsection (a)(6)(A) claim. The bankruptcy court reasoned that Patriot's accurate response about the absence of a § 727(a)(6) cause of action did not nullify the notice provided by Patriot's opening statement because later evidence, particularly his testimony, introduced at trial pertained to the unpleaded claim. Id. at 106-07. But, the bankruptcy court did not account for Patriot's failure to raise a request for amendment of its pleadings during the two trial days[5] following Fustolo's testimony, and the court's own recitation at the trial's conclusion of the claims litigated, and Patriot's affirmation of those claims. Additionally, Patriot's inclusion of the court-order violation in its opening statement, combined with its disavowal of the existence of an (a)(6) claim immediately following, supports the conclusion that Fustolo's violation of court orders was relevant to the extant claims. Cf. United States v. Ciampa, 793 F.2d 19, 25 (1st Cir. 1986) (finding trial judge's interruption of opening statement alluding to evidence "of only collateral relevance" was justified); United States v. Hershenow, 680 F.2d 847, 858 (1st Cir. 1982) ("The function of the defendant's opening statement is to enable him to inform the court and jury

---

[5]  The trial was held on non-consecutive days.

-24-

what he expects to prove . . . ." (alteration in original) (quoting United States v. Freeman, 514 F.2d 1184, 1192 (10th Cir. 1975))).

In light of this repeated confirmation that no § 727(a)(6) claim was to be or had been litigated, and the ambiguity related to the "violat[ion] of this Court's orders" noted in part II(C)(1) supra, Patriot's opening statement did not provide adequate notice of the claim raised in Patriot's motion to amend. Patriot's lack of objection did not constitute implied consent.

### 4. **Fustolo's Testimony**

Finally, we reach Patriot's examination of Fustolo on trial day four. The bankruptcy court found that Fustolo's failure to object to Patriot's line of questioning "constitute[d] acquiescence at trial in the introduction of evidence which was more strongly relevant to the issue of Fustolo's noncompliance with the December 31st Order." Fustolo, 563 B.R. at 108. Patriot's counsel's questions and Fustolo's answers addressed Fustolo's compliance, or non-compliance, with the December 31 Order. But, again, the substance of the unchallenged testimony is pertinent to other claims already presented. While the testimony also relates to a possible § 727(a)(6) claim, stray references that arguably point to a new claim cannot easily generate a finding of acquiescence when they are accompanied by an

-25-

express disavowal of such a claim that is not itself recanted until months after the trial.

Accordingly, Fustolo's testimony was not relevant only to the unpleaded issue and therefore cannot be construed to imply consent.

## D. Prejudice

While a lack of consent constitutes sufficient grounds for denying amendment, see In re Rauh, 119 F.3d at 52 ("A post-trial motion to conform the judgment to the evidence should not be allowed . . . unless the opposing party expressly or impliedly agreed to try the matter in question."), there remains another reason why the bankruptcy court's judgment allowing the motion to amend must be reversed. Patriot's request to amend its pleadings was first noted two months after trial in its post-trial brief, and a formal Motion to Conform the Pleadings to the Evidence was not filed until almost three months after the trial's conclusion. "We think that prejudice is an almost inevitable concomitant in situations where, as here, the late amendment attempts to superimpose a new (untried) theory on evidence introduced for other purposes." DCPB, 957 F.2d at 917 (citing Grand Light & Supply Co., Inc. v. Honeywell, Inc., 771 F.2d 672, 680 (2d Cir. 1985)). When considering the prejudice to the non-moving party, the appellate court may consider "whether the movant has shown any

justification for its delay in moving to amend." Id. at 917-18 (finding prejudice where motion to amend was not based on new facts or a newly decided case); see also Campana, 755 F.2d at 216 (finding no justification for the delay in moving to amend where motion to amend was made in response to a jury question).

Here, Patriot's justification for its delay is not based on any newly discovered facts or changes in the law. While the bankruptcy court imputed the knowledge of a possible § 727(a)(6) claim on Fustolo as early as the March 17, 2016, Patriot too must be held to the same standard of foreseeability in this analysis. We do not intend to imply that a plaintiff must move to amend immediately after the non-movant is put on notice of a new claim; for that matter, Rule 15(b)(2) explicitly contemplates that a motion to amend can occur "even after judgment," which, by its nature, occurs after the non-moving party had notice of the new claim through evidence introduced at trial. Nonetheless, a moving party must provide a sufficient justification to excuse its delay. See DCPB, 957 F.2d at 917-18; Campana, 755 F.2d at 216.

Furthermore, "[k]nowledge heightens the need for prompt action." DCPB, 957 F.2d at 918. Before this court, Patriot proffers that it did not move to amend its complaint between March 17, 2016, and the commencement of trial because it did not want to give Fustolo an opportunity to seek further delay. But, a desire

-27-

to avoid a trial delay cannot justify precluding the opposing party an opportunity to react to the new claim cannot justify a delay in moving to amend. Moreover, as noted in one of the bankruptcy court's orders that Patriot included in its request for judicial notice, the court had set an expeditious trial date as a sanction for Fustolo's violation of the December 31 Order, militating the concern of future substantial delays. Between the March 17, 2016 sanctions hearing and the beginning of trial, the bankruptcy court denied Fustolo's motion to continue trial on March 24, 2016, Fustolo's motion for reconsideration of that denial on April 8, 2016, and Fustolo's motion to continue a hearing on May 16, 2016, Patriot's justification, a confession of sandbagging, is unpersuasive in light of the March 17, 2016 sanction imposed.

Patriot further states that it was "busy finishing discovery . . . [and] preparing for trial," as a reason for the delayed motion to amend, and notes both parties' counsel's previously scheduled vacations in relation to its delayed post-trial filing. But, Patriot's busyness cannot justify the injection at the eleventh hour of a new theory of discharge denial based on previously-available facts -- Fustolo's failure to comply with the bankruptcy court's December 31 Order. See DCPB, 957 F.2d at 918; see also Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 101 (1st Cir. 2003) ("Most attorneys are busy most of the time

-28-

and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences.").

Because we find that Fustolo did not have fair notice of the unpleaded claim and was prejudiced by its addition, we hold that the bankruptcy court's allowance of Patriot's motion to conform its pleadings under Fed. R. Civ. P. 15(b)(2) was an abuse of discretion.  Finding the bankruptcy court's allowance of Patriot's motion to amend improper, we need not reach the merits of Fustolo's claim that § 727(a)(6) does not apply to his assertion of his Fifth Amendment right against self-incrimination.

## III. <u>CONCLUSION</u>

"The truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush." <u>Doral Mortg.</u>, 57 F.3d at 1172.  Here, for the reasons stated above, Fustolo did not receive adequate notice of an unpleaded claim, and did not provide his implied consent.  We therefore **<u>REVERSE</u>** the bankruptcy court's order and **<u>REMAND</u>** for further proceedings consistent with this opinion.  We take no position as to the merits of any remaining claims and leave such further analysis to the bankruptcy court.

-29-