# United States Court of Appeals
## For the First Circuit

No. 16-1285

IN RE: RICHARD D. CRAWFORD,

Debtor.

PREMIER CAPITAL, LLC,

Plaintiff, Appellee,

v.

RICHARD D. CRAWFORD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Thompson and Barron, Circuit Judges,
and McConnell,[*] District Judge.

Emily C. Shanahan, with whom Mark S. Furman, John D. Finnegan, and Tarlow, Breed, Hart & Rodgers, P.C. were on brief, for appellant.

Douglass C. Lawrence, with whom Thomas H. Curran, Peter Antonelli, and Curran Antonelli, LLP were on brief, for appellee.

October 25, 2016

---

[*] Of the District of Rhode Island, sitting by designation.

**MCCONNELL, District Judge.** A bankruptcy court denied Richard D. Crawford's petition for bankruptcy, in part, because Crawford omitted the existence of his Cash Balance Plan ("CBP"), a retirement account, from his Schedule B filing. While Crawford omitted the existence of the account, he disclosed the account's value through inclusion with a second retirement account, a 401(k). On appeal, this Court considers whether omitting an asset's name but including the asset's value on a Schedule B form clears the materiality threshold for a false oath claim under 11 U.S.C. § 727(a)(4)(A). For the reasons set out below, we affirm.

## I.   Background

The genesis of this bankruptcy case dates back to a loan that Crawford personally guaranteed. Crawford, a financially sophisticated individual, works in the banking industry as a mortgage originator at Wells Fargo. In 1987, Oak Street Realty Trust ("Oak Street"), a company in which Crawford has an 80% interest, received a $250,000 loan from Amoskeag Bank ("Amoskeag") secured by Oak Street property. In 1989, through a Change in Terms Agreement, Crawford guaranteed the loan in his individual capacity. After the loan matured, neither Oak Street nor Crawford paid the balance. The FDIC, acting as liquidating agent for Amoskeag, assigned Amoskeag's interest to Tenth RMA Partners, L.P. ("RMA"). RMA obtained a judgment against Crawford in the amount of

$388,753.01 and then assigned its interest to Premier who sought and received a $456,774.04[1] execution on the judgment from the Middlesex Superior Court. Save for the $7,030.68 that Premier obtained from wage garnishments, the execution remains in full force.

Reaching a financial impasse with liabilities far exceeding assets, Crawford petitioned for bankruptcy. He subsequently filed his Schedules and Statement of Financial Affairs ("SOFA"). Two weeks later, Crawford filed an amended SOFA. With Crawford's fresh start in sight, Premier thwarted Crawford's discharge of debt through the filing of the instant action. Two claims formed the basis for the bankruptcy court's disposition: (1) the making of a false oath in violation of 11 U.S.C. § 727(a)(4)(A) and (2) the intentional concealment of property in violation of 11 U.S.C. § 727(a)(2)(A). Because we affirm on the false oath count, we do not reach the merits of the unlawful concealment claim.

At the time Crawford petitioned for bankruptcy, he had two retirement accounts with Wells Fargo, a 401(k) account and a CBP. Wells Fargo provides quarterly statements to Crawford with the heading "401(k) Plan and Cash Balance Plan." On this

---

[1] Premier alleges that at the time Crawford filed for bankruptcy, Crawford owed an amount in excess of $725,000.

- 3 -

statement, the two accounts are listed separately and with separate balances, but the statement also contains a cumulative amount reported under the label "Total Retirement Accounts."

Schedule B, item 12, requires an individual filing for bankruptcy to disclose "[i]nterests in IRA, ERISA, Keough, or other pension or profit sharing plans" and to "[g]ive particulars." In addition, this form contains a column for the description and location of property as well as the current value of the property. After consulting with counsel, Crawford filed his Schedule B, item 12, which listed "401(k) with Wells Fargo" under the description and "$148,000" under the value. Crawford's form made no mention of his CBP.

Premier's complaint made a general allegation of a false oath in Crawford's Schedules and Statement of Financial Affairs. The CBP, though not mentioned in the complaint as the basis for a false oath claim, became a topic of the trial on the second day of the three day trial. At trial, Premier introduced Exhibit 847-1, which contained Crawford's quarterly statements with Wells Fargo. Crawford objected to the introduction of the exhibit under Rule 403, arguing that the statements were cumulative. The bankruptcy court overruled Crawford's sole objection on the matter. On direct examination, Premier questioned Crawford on whether he had a CBP

that he failed to list on his Schedule B.[2]  Evasive at first, Crawford retorted, "I gave all this information to [my former attorney]."  Eventually, Crawford admitted that his CBP is a retirement account and he failed to include it in his Schedule B. Pressing further, Premier directly asked why Crawford failed to list the CBP.  To this, Crawford equivocated, "I don't have a good answer for you sir."  On cross-examination, Crawford's counsel presented Crawford with Exhibit 847-1 and asked whether he disclosed the amount listed on the quarterly statement.  Crawford affirmed that he had.  On redirect, Premier once again questioned Crawford on his failure to list his CBP.  Specifically, Premier asked, "Is it not separated out as a separate plan on your statement, the CBP?  Is it not?"  "I think it's a different heading. I agree; yes, sir," Crawford answered.

In Premier's post trial brief, Premier argued that by failing to disclose his interest in the CBP, Crawford committed a false oath in violation of 11 U.S.C. § 727(a)(4)(A).  In Crawford's Proposed Findings of Fact and Conclusion of Law, again contesting the disclosure, Crawford reasoned that he did disclose his CBP, or if he did fail to disclose, that failure was not the product of

---

[2] Crawford objected once arguing that "this assumes facts not in evidence."  Upon elaboration, he contended that the Schedules were prepared prior to receiving the new quarterly statement.

fraudulent intent. At closing arguments, both parties engaged the merits of the false oath claim at issue. Crawford averred, "So while the CBP wasn't separately listed on his schedules, the amount in it was included in the 401K amount that was reflected on Mr. Crawford's schedule . . . ."

The bankruptcy court found Crawford "less than credible" based on numerous misrepresentations and evasive answers. The court ruled that while the claim of a false oath by omission of the CBP was not raised in Premier's complaint, Crawford impliedly consented to the trial of the charge. Additionally, the court concluded that Crawford's failure to include his CBP in his Schedule B, item 12, amounted to a false oath. Finding Crawford's veracity suspect, the court reasoned that the CBP and 401(k) are separate accounts and that Crawford believed the accounts were separate when he filed his Schedule B. Premier Capital, LLC v. Crawford (In re Crawford), 531 B.R. 275 (Bankr. D. Mass. 2015). On appeal, the District of Massachusetts affirmed the false oath claim. Premier Capital, LLC v. Crawford (In re Crawford), No. 15-12726 (D. Mass. Feb. 26, 2016). Now, Crawford raises several errors with the district court's decision: the finding of implied consent on Crawford's part to try the omission of the CBP Plan from Schedule B, the improper application of the burden-shifting

method of proof for false-oath claims, and the determination that the omission of the CBP was a false oath and material.

## II.    Standard of Review

We review the bankruptcy court's findings of fact for clear error. Davis v. Cox, 356 F.3d 76, 82 (1st Cir. 2004). We will not set aside the trier's findings absent a "strong, unyielding belief that a mistake was made." Carp v. Carp (In re Carp), 340 F.3d 15, 22 (1st Cir. 2003). In contrast, we review the bankruptcy court's conclusions of law de novo, Davis, 356 F.3d at 82, and review issues of implied consent for abuse of discretion. Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 319 (1st Cir. 2012). "Notwithstanding the fact that we are the second-in-time reviewers, we cede no special deference to the district court's determinations." Carp, 340 F.3d at 21.

## III.    Analysis

Before this Court may reach the merits of the false oath claim, we must first consider two threshold issues -- implied consent and improper burden shifting.

### A. Implied Consent

Premier's complaint and pre-trial filings never identified the omission of the CBP as forming the basis of a false oath claim. However, "Federal Rule of Civil Procedure 15(b) allows an unpleaded claim to be considered when the parties' conduct

demonstrates their express or implied consent to litigate the claim." Antilles Cement Corp., 670 F.3d at 319. "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2).[3]

> A party can give implied consent to the litigation of an unpleaded claim in two ways: by treating a claim introduced outside the complaint 'as having been pleaded, either through [the party's] effective engagement of the claim or through his silent acquiescence'; or by acquiescing during trial 'in the introduction of evidence which is relevant only to that issue.'

Antilles Cement Corp., 670 F.3d at 319 (alteration in original) (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).

At trial, Premier introduced Crawford's quarterly statements with Wells Fargo and examined Crawford regarding the omission of the CBP from his Schedule B. While Crawford objected to the admission of the statements under Rule 403, he clarified that the duplicative nature of the documents formed the basis for his objection. See Conjugal P'ship v. Conjugal P'ship, 22 F.3d 391, 400-01 (1st Cir. 1994) ("One sign of implied consent is that

---

[3] Rule 15 of the Federal Rules of Civil Procedure apply in adversary proceedings in bankruptcy court, under Rule 7015 of the Federal Rules of Bankruptcy Procedure.

issues not raised by the pleadings are presented and argued without proper objection by opposing counsel." (internal quotation marks omitted) (quoting In re Prescott, 805 F.2d 719, 725 (7th Cir. 1986))). On multiple occasions, Premier pointedly asked Crawford why he failed to include his CBP on his Schedule B. Crawford responded without objection. In fact, on cross-examination, Crawford's counsel attempted to rebut Premier's questions by pointing out that Crawford disclosed the value of the asset. Both Crawford and Premier continued to contest the issue in post-trial memoranda and closing arguments. Because Crawford failed to object to the trial of an unpleaded claim and engaged the merits of the claim, this Court cannot say that the bankruptcy court abused its discretion by finding Crawford impliedly consented.

## B. Burden Shifting

Crawford next asserts that both the bankruptcy court and district court prematurely applied the burden-shifting framework, saddling him (to quote his brief) with the burden of proving "that his disclosure was not false and that it was not material without first finding that Premier ha[d] made out its prima facie case." Under § 727(a)(4)(A), the plaintiff bears the burden to establish each element of a prima facie case by a preponderance of the evidence. In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974). Once that party puts forth a prima facie case, the burden shifts to the

- 9 -

debtor who must then come forth with evidence rebutting the offense.  Id.

The bankruptcy court recited the correct burden-shifting framework.  Specifically, the court stated:

> The burden of proof is on the party objecting to discharge. . . . *Tully* indicates, however, that 'once it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense charged.'  This language does not shift the burden of proof or nullify the need to prove knowledge of falsity and fraudulent intent.  Rather, it establishes that a false oath may itself be sufficient to establish knowledge of falsity and fraudulent intent.

Premier Capital, LLC v. Crawford (In re Crawford), 531 B.R. 275, 299 (Bankr. D. Mass. 2015) (alteration in original) (citations omitted).  Nothing in the bankruptcy court's memorandum of decision leads us to believe that the court improperly placed the onus on Crawford prior to the establishment of a prima facie case.  The one sentence that Crawford points to in the bankruptcy court's memorandum of decision -- "[Crawford] does not deny, and I find, that [the omission of the CBP] was material" -- proves unavailing because that sentence merely explains that Crawford did not attempt to rebut the materiality of the omission.  Id. at 307.  Moreover, Crawford's position is inapposite given the bankruptcy court's statement that "[t]he party objecting to the discharge must show that (i) the debtor made an oath (ii) that was false and (iii)

related to a material fact in the case (iv) knowingly and (v) fraudulently." Id. at 306.

In addition, Crawford reasons that improper burden shifting occurred because, in Crawford's words, Premier failed to present any evidence of materiality. Despite Crawford's assertion to the contrary, Premier put forth evidence proving the materiality of the CBP omission. Namely, Premier introduced Crawford's quarterly 401(k) and CBP statements into evidence and examined Crawford regarding the omission of the CBP. Crawford fails to point to language in the bankruptcy court's disposition that indicates improper application of the burden-shifting framework, and Premier presented evidence sufficient to make out a prima facie case; therefore, we do not find that the bankruptcy court improperly shifted the burden to Crawford.

## C. False Oath

The Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" Grogan v. Garner, 498 U.S. 279, 286–87 (1991) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). In considering a denial of discharge for a false oath, two competing considerations are at play. On the one hand, § 727(a)(4)(A) purports to prevent debtors who "play fast and loose with their assets or with the reality of their affairs" from

- 11 -

seeking refuge under the Bankruptcy Code.  Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).  On the other hand, "bankruptcy is an essentially equitable remedy," so "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor."  Id.  Where a claim falls squarely within one of the Bankruptcy Code's exceptions -- and Premier's false oath claim certainly does -- the liberal construction of the right to discharge does not apply.  Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 498 n.1 (1st Cir. 1997).

"The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . . ."  11 U.S.C. § 727(a)(4)(A).  In order for § 727(a)(4)(A) to form the basis for denying discharge, the Court must find that the debtor "(i) knowingly and fraudulently  made a false oath, (ii) relating to a material fact."  Boroff, 818 F.2d at 110.  On appeal, Crawford advances arguments encompassing the false oath and material fact elements.[4]

When a debtor files her Schedules, she does so under the equivalent of an oath.  Fed. R. Bankr. P. 1008; Perry v. Warner (In re Warner), 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000).  A debtor

---

[4] Crawford does not raise error with the intent component -- "knowingly and fraudulently."  § 727(a)(4)(A).

has a duty to prepare schedules accurately and with "reasonable particularization under the circumstances." Donarumo v. Furlong (In re Furlong), 660 F.3d 81, 87 (1st Cir. 2011) (quoting In re Mohring, 142 B.R. 389, 394–95 (Bankr. E.D. Cal. 1992), aff'd, 153 B.R. 601 (B.A.P. 9th Cir. 1993), aff'd, 24 F.3d 247 (9th Cir. 1994)) (internal quotation marks omitted). "[A] debtor is required only to 'do enough itemizing to enable the trustee to determine whether to investigate further.'" Id. at 87 (quoting Payne v. Wood, 775 F.2d 202, 207 (7th Cir. 1985)).

By omitting an account from his Schedule B, Crawford made a false oath. See Harrington v. Donahue (In re Donahue), BAP No. NH 11-026, 2011 WL 6737074, at *11 (B.A.P. 1st Cir. Dec. 20, 2011) ("[W]hen a debtor omits a transaction from his Statement of Financial of Affairs, he has made a false oath."). Schedule B, item 12, instructed Crawford to disclose his "[i]nterests in IRA, ERISA, Keough, or other pension or profit sharing plans" and to "[g]ive particulars." While Crawford listed his 401(k) account with Wells Fargo and included the combined value of his 401(k) and CBP, Crawford failed to list the existence of his CBP on the form, as required by Schedule B, item 12.

A false oath is material if its subject matter "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the

existence and disposition of his property." Boroff, 818 F.2d at 111 (quoting Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984)) (internal quotation marks omitted). "[T]he threshold to materiality is fairly low." Lussier v. Sullivan (In re Sullivan), 455 B.R. 829, 839 (B.A.P. 1st Cir. 2011) (quoting Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)) (internal quotation marks omitted). Like many of our sister courts, we have rejected the notion that valuation determines materiality.[5] Boroff, 818 F.2d at 110 n.4. Therefore, the disclosure of an asset's value does not dispense with the materiality question.

Regardless of whether a creditor may reach an asset, the debtor still must disclose that asset's existence. Daniels v. Agin, 736 F.3d 70, 84 (1st Cir. 2013). After all, the creditor,

---

[5] E.g., Palatine Nat'l Bank v. Olson (In re Olson), 916 F.2d 481, 484 (8th Cir. 1990) ("While we are not prepared to say that value is irrelevant to materiality, we are certain that it is not determinative."); Chalik, 748 F.2d at 618 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." (citations omitted)); see also U.S. Trustee v. Garland (In re Garland), 417 B.R. 805, 814 (B.A.P. 10th Cir. 2009) ("[M]ateriality is not defeated by the fact that the undisclosed property interests are determined to be without value."); cf. Fogal Legware of Switz., Inc. v. Willis (In re Wills), 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999) ("A false statement or omission may be material even if it does not cause direct financial prejudice to creditors.").

not the debtor, is in the best position to determine what may or may not affect that creditor. As articulated in In re Mascolo, "[T]he materiality of the false oath will not depend upon whether in fact the falsehood has been detrimental to the creditors." 505 F.2d 274, 278 (1st Cir. 1974) (quoting In re Slocum, 22 F.2d 282, 285 (2d Cir. 1927)) (internal quotation marks omitted). Thus, we need not analyze the character of the asset or whether creditors could recover from the asset.

Critically for our purposes, when it comes to materiality, we distinguish an asset from an asset's value. Knowledge of an asset's value alone does little to forewarn creditors and the court of unscrupulous dealings. For this reason, the discovery of an asset's existence, as in the case of the CBP, clears the threshold for materiality. Boroff, 818 F.2d at 111. Listing one retirement account held with a financial institution does not signal the existence of a second account held with that same institution. To hold otherwise would be at odds with the principles of a rule rooted in honest disclosures. Our decision today, follows our ruling in Daniels, which addressed a similar scenario. 736 F.3d at 82–83. Much like the matter before this Court, in Daniels, the debtor failed to list two IRA accounts in his Schedule B and instead included the value with that of the reported profit-sharing plan. Id. at 74. Despite disclosing the

value, we regarded the excluded IRA information as material.  Id. at 83.

Bankruptcy disclosures are not meant to create a trap for the unwary,[6] and we see no perverse result in affirming the denial of Crawford's bankruptcy.  By omitting the existence of the CBP, a creditor would not otherwise know of the plan's existence. Creditors have a right to investigate the history of a debtor's asset,[7] and if a debtor fails to disclose the existence of an asset, then a creditor may not be able to engage in due diligence.

## IV.    Conclusion

We affirm the district court's ruling on the § 727(a)(4)(A) claim; therefore, we do not reach the merits of the § 727(a)(2)(A) claim.

**Affirmed.**

---

[6] One false step does not lead to draconian results.  See, e.g., Dotson v. Cogswell (In re Cogswell), 462 B.R. 28, 35 (Bankr. D. Mass. 2012) (misstating the year of a boat and misstating an inconsequential sum on a credit card statement are "harmless errors"); see also Steele v. Boutiette (In re Boutiette), 168 B.R. 474, 482 (Bankr. D. Mass. 1994) ("[A] debtor [should] not be put at risk that discharge will be denied by a mischaracterization which is esoteric.").

[7] "[C]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them."  Harrington v. Mazzone (In re Mazzone), 510 B.R. 439, 445 (Bankr. D. Mass. 2014) (quoting JP Morgan Chase Bank, N.A. v. Koss (In re Koss), 403 B.R. 191, 213 (Bankr. D. Mass. 2009)) (internal quotation marks omitted); Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984).