**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3766
_____

IN RE: ERICA LYNN MILTON, Debtor

GERALD S. LEPRE, JR., Appellant

v.

ERICA LYNN MILTON

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-00184)
District Judge: Honorable Joy Flowers Conti

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 26, 2020

Before: KRAUSE, MATEY, and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 15, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Gerald S. Lepre, Jr., filed an adversary proceeding in Bankruptcy Court seeking a determination that Chapter 7 debtor Erica Lynn Milton violated 11 U.S.C. § 727(a)(4)(A) by knowingly and intentionally making materially false statements under oath in connection with her bankruptcy petition.  After a one-day trial, the Bankruptcy Court ruled in favor of Milton and denied Lepre's claim.  The District Court affirmed and subsequently denied Lepre's timely motion for reconsideration.  This appeal ensued.  For the reasons that follow, we will affirm the District Court's judgment.

The District Court had jurisdiction to review the Bankruptcy Court's final order under 28 U.S.C. § 158(a)(1).  We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.  "On an appeal from a bankruptcy case, our review duplicates that of the district court and view[s] the bankruptcy court decision unfettered by the district court's determination." In re Orton, 687 F.3d 612, 614-15 (3d Cir. 2012) (internal quotation and citation omitted).  Thus, we review the Bankruptcy Court's findings of fact for clear error and its legal conclusions de novo.  Id. at 615.

Milton filed a voluntary Chapter 7 petition in March 2016.  Lepre, who holds an unsatisfied judgment against Milton stemming from a replevin action in the Court of Common Pleas of Allegheny County, filed a complaint in the Bankruptcy Court objecting to Milton's discharge.  As relevant here, Lepre alleged that Milton violated § 727(a)(4)(A), which allows for a denial of discharge where a debtor "knowingly and

2

fraudulently, in or in connection with the case[,] made a false oath or account."[1]

Specifically, Lepre alleged that, on her Schedules and Statement of Financial Affairs (SOFA), Milton misrepresented (1) that she owned property belonging to him; (2) that she held or owned property belonging to someone else, and (3) the value of her house.

In its 22-page written memorandum of decision, the Bankruptcy Court quickly disposed of the third claim, finding that Lepre wholly failed to present evidence regarding the valuation of Milton's home. Bankr. Court Op. at 14. With regard to his first claim, the Bankruptcy Court noted that Lepre and Milton "previously resided together, were engaged to be married, purchased items for the home they shared together, and exchanged some gifts during that period of time."[2] Id. As a result, the Court explained, there was much dispute regarding the ownership of certain property. It concluded that,

---

[1] Lepre did not appeal the Bankruptcy Court's denial of his claims that the debt owed to him was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

[2] According to the Bankruptcy Court's findings of fact, Lepre's and Milton's relationship had turned acrimonious, and Milton filed a petition for Protection from Abuse (PFA). After a PFA order was issued in March 2015, Lepre left Milton's house with only a few of his belongings. Pursuant to the negotiated consent order, the parties were to coordinate an arrangement by which Lepre could retrieve his belongings from Milton's residence. In anticipation of the retrieval, Milton moved Lepre's belongings from her home to a shed on the property to await pick-up by Lepre. He "failed to comply with the terms of the PFA Order to retrieve his belongings" and the property remained in the shed "for years." Bankr. Court Op. at 6, 16. In June 2015, Lepre filed the action in replevin to obtain his personal property and to recover an alleged interest in the real property. The state court entered a default judgment in favor of Lepre in the amount of $71,700. Lepre subsequently filed for a writ of execution, but the state proceedings were stayed once Milton filed a Suggestion of Bankruptcy.

3

even assuming Milton's statements were false, Lepre failed to prove that she knew of the falsity. Rather, based on her credible testimony, the Court found that Milton listed property in her schedules which she truly believed she owned. The Court explained that this conclusion was supported, not undermined, by Milton's ready acknowledgement during the proceedings that certain property in her possession—which she later turned over to Lepre—did in fact belong to him.

The Bankruptcy Court next determined that Milton did not falsely represent in her SOFA that she did not "hold or control any property that someone else owns." It noted that Milton's responses, both at the Meeting of Creditors and at trial, indicate that she was unaware of the extent of Lepre's property remaining in her possession[3] and, in any event, that she did not believe that she was "holding" Lepre's property because it was "readily available to him as long as he complied with the PFA Order." Id. at 15-16. Ultimately, it concluded that there was no basis for finding that Milton intended to deceive either the Bankruptcy Court or Lepre in her SOFA. Moreover, the Court found that Lepre failed to establish that any alleged falsehood was material to Milton's discharge. As the Court observed, there was no attempt to establish that Milton's statement impeded the trustee's or creditors' efforts to investigate her financial affairs. See 6 Collier on Bankruptcy ¶ 727.04[1][b] (16th ed. 2020) (noting that a false oath is

---

[3] The Court noted that the parties were focused on a few disputed items, concluding that any misrepresentation regarding other property Milton possessed which could have easily been turned over to Lepre was "inadvertent."

4

material "if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property"). Accordingly, the Bankruptcy Court determined that there was no violation of § 727(a)(4)(A).

On appeal to the District Court, Lepre did not file a statement of the issues to be presented on appeal, as required by Fed. R. Bankr. P. 8009(a)(1)(A), nor did he specify in his brief any specific findings of fact or legal conclusions which were in error. The District Court nevertheless considered Lepre's general argument that the Bankruptcy Court erred in failing to determine that Milton had made a false oath and was not entitled to a discharge. See In re Comer, 716 F.2d 168, 177 (3d Cir. 1983) (noting that "[n]ot every failure to follow procedural rules mandates dismissal of the appeal"). We agree with the District Court that the appeal was meritless.

Lepre had the burden to prove by a preponderance of the evidence that Milton's discharge should be denied. See In re Crawford, 841 F.3d 1, 7 (1st Cir. 2016). As the District Court noted, the record supports the Bankruptcy Court's conclusion that he failed to establish that Milton knowingly made a materially false statement on her SOFA with the intent to deceive. The District Court based its findings on the substance of the witnesses' testimony and its assessment of their credibility, and Lepre provides no basis on appeal to disturb these findings. See Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 434 (3d Cir. 2002) (noting that an appellate court gives "due regard to the opportunity of [a bankruptcy court] to judge first-hand the credibility of witnesses" and

5

accepts that court's "ultimate factual determinations" unless they are "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data").

The mainstay of Lepre's argument is his contention that the Bankruptcy and District Courts "intermeddled in a state court matter." Appellant's Informal Br. at 3. First, he argues that the discharge in bankruptcy was barred by the Rooker-Feldman doctrine,[4] which precludes federal consideration of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). It is a narrow doctrine, limited to cases where the complained-of injury stems directly from the state court's proceedings. See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 167 (3d Cir. 2010). It does not apply here, where Lepre brought the adversary proceeding and Milton does not challenge the state court's judgment in the pre-petition replevin action. Indeed, the issue before the Bankruptcy Court was whether Milton made a false oath in her SOFA such that she was not entitled to a discharge in bankruptcy of her debts, including the liability stemming from the default judgment. That issue—whether the bankruptcy discharge should have been denied—was not before the state court, and, therefore, the source of the injury sought to

_____

[4] See D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923).

be redressed is not the state court judgment. See In re Knapper, 407 F.3d 573, 583 n.22 (3d Cir. 2005) (quoting In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc) ("In apparent contradiction to Rooker-Feldman theory, bankruptcy courts are empowered to avoid state judgments, to modify them, and to discharge them.")).

Next, Lepre contends that the Bankruptcy Court lacked the constitutional authority to enter its judgment, relying on Stern v. Marshall, 564 U.S. 462 (2011). In that case, the Supreme Court held that a bankruptcy court "lack[s] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." Id. at 503. However, here, the Bankruptcy Court did not adjudicate a claim regarding Lepre's rights to the property; rather, it rendered a judgment in a "protypical bankruptcy context, a dischargeability action," which it was authorized to do. In re Deitz, 760 F.3d 1038, 1044 (9th Cir. 2014) (noting that the decision in Stern was narrow and did not affect the bankruptcy court's authority to determine the dischargeability of bankruptcy claims) (citing cases); see 28 U.S.C. § 157(b)(2)(I), (J) ("[D]eterminations as to the dischargeability of particular debts" and "objections to discharges" are "core proceedings" in bankruptcy.); see also In re Tribune Media Co., 902 F.3d 384, 393 (3d Cir. 2018) (noting that "[a] bankruptcy court has the constitutional authority to enter a final judgment on core proceedings").

For the foregoing reasons, we will affirm the orders of the District Court affirming the order of the Bankruptcy Court and denying the motion for reconsideration.

7