NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0264n.06

No. 22-3132

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| SAMSON KANLA ORUSA, M.D., | ) | **FILED**<br>Jun 08, 2023<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) |  |
| v. | ) | ON PETITION FOR REVIEW OF AN ORDER OF THE DRUG ENFORCEMENT ADMINISTRATION |
| DRUG ENFORCEMENT ADMINISTRATION, | ) |  |
| Respondent. | ) | OPINION |

Before: BOGGS, WHITE, and BUSH, Circuit Judges.

BOGGS, Circuit Judge. Dr. Samson Orusa petitions for review of an order of the Drug Enforcement Agency (DEA) revoking his certificate of registration, which doctors need to prescribe controlled substances. The DEA initiated revocation proceedings after an investigation revealed that Orusa, who operated a pain-management clinic in Clarksville, Tennessee, was prescribing drugs to patients in violation of state law and professional standards. After a hearing before an Administrative Law Judge (ALJ), the Administrator of the DEA revoked Orusa's registration. She found that he had lied in his application for registration and that his continued registration was inconsistent with the public interest. In his petition for review, Orusa challenges only the Administrator's public-interest determination. But the Administrator's finding that Orusa's materially falsified his application—which Orusa does not dispute—independently justifies the revocation of his registration. We deny the petition for review.

I

Orusa is a doctor licensed to practice medicine in Kentucky and Tennessee. In 1997, he opened a clinic in Clarksville, Tennessee. At first, the clinic provided primary care, but in 2004, Orusa began concentrating on pain management.

In 2017, the U.S. Department of Health and Human Services Office of the Inspector General began investigating Orusa with the assistance of the Tennessee Bureau of Investigations. Posing as a patient, a special agent of the Bureau contacted Orusa's clinic and visited it five times over the course of two months, recording some of his encounters with Orusa with a hidden camera. The agent deliberately adopted behaviors designed to create suspicion that he was a drug diverter, providing insufficient documentation and giving contradictory responses. The agent would later testify that Orusa fabricated numerous entries in his medical record, including symptoms that the agent had never mentioned and results of exams that never took place. Orusa wrote controlled-substance prescriptions for the agent on three separate occasions.

In February and September 2018, the DEA searched the clinic and Orusa's home, seizing records. These records included the medical charts and prescription histories of five other patients that Orusa had treated at the clinic. The agent's experiences, the records that Orusa had created for the agent and the five other patients, and expert testimony would form the basis of the DEA's administrative proceedings against Orusa.

But the DEA was not the first to act. On May 31, 2018, the Tennessee Department of Health initiated administrative proceedings against Orusa, which terminated when Orusa agreed to surrender his Tennessee pain-management-clinic certificate. On December 12, 2018, a federal grand jury indicted Orusa on controlled-substances felony charges. And on January 15, 2019, the

Kentucky Board of Medical Licensure issued an emergency order of restriction that prohibited Orusa from prescribing, dispensing, or otherwise professionally utilizing controlled substances.

Then, on May 31, 2019, the DEA initiated revocation proceedings against Orusa. At that time, Orusa had a DEA registration under his Tennessee medical license at the Clarksville clinic. That registration was set to expire on December 31, 2019, and so, on November 6, 2019, Orusa applied for a renewal. In his application for renewal, Orusa denied that he had ever surrendered for cause or had a state professional license or controlled-substance registration revoked, suspended, denied, restricted, or placed on probation, or had any such action pending. Orusa also had pending an application for a new DEA registration under his Kentucky license. The federal government sought revocation of Orusa's current registration and denial of his pending applications for registration, arguing that his continued registration was inconsistent with the public interest. It also sought denial of Orusa's application for a Kentucky-based DEA registration, arguing that, under the Kentucky emergency order, he lacked authority to handle controlled substances in Kentucky—a prerequisite for registration.

Orusa requested a hearing before an ALJ. Before the hearing, the government moved for leave to bring an additional charge against Orusa, and the ALJ granted the motion. In a supplemental prehearing statement, the government charged Orusa with materially falsifying his application to renew his Tennessee-based DEA registration by denying that he had been subject to state discipline.

The administrative hearing took place on September 9, October 15, and October 21, 2020. The undercover government agent testified about his visits to the clinic. The government's expert testified that the prescriptions that Orusa issued to the agent were outside the usual course of professional practice and below the standard of care because Orusa failed to take an adequate

medical history, perform an adequate physical exam, create an adequate treatment plan, and maintain complete and accurate records. The expert found similar shortcomings in Orusa's treatment of the five other patients whose records he had reviewed. The expert also highlighted additional problems with Orusa's treatment of these patients. For example, several patients' medical charts contained identically worded indications for all, or almost all, physical exams and reviews of systems, which the expert considered evidence of fabrication. Orusa also continued to see patients, and prescribe controlled substances, after patients tested negative for the medications that they were prescribed and positive for illegal drugs. In the case of one patient, Orusa ignored red flags of substance abuse until the patient overdosed in his waiting room, and then prescribed buprenorphine without testing whether she still had heroin in her system—a course of treatment that the government's expert considered dangerous and unprofessional.

A DEA diversion investigator testified next. She authenticated various documents and explained the significance of the questions on Orusa's application for renewal. In her opinion, Orusa's agreement to surrender his Tennessee pain-management certificate required him to answer the question about past state professional discipline in the affirmative.

Orusa testified as part of his case-in-chief. Orusa offered explanations for his treatment of the agent and the other five patients. He explained, for example, that the charts often contained the same language for indications of anxiety because anxiety patients typically share the same symptoms. He also argued that the Tennessee pain-management guidelines left the handling of irregular urine-drug-screening results to his discretion, and that he had been able to bring patients back into compliance. Orusa cross-examined the diversion investigator but did not testify about the material-falsification allegation.

On December 18, 2020, the ALJ issued his recommended rulings, findings of fact, conclusions of law and decision, and neither party filed exceptions. The Administrator adopted the ALJ's recommended decision with minor modifications on January 19, 2022. She found that Orusa had failed to maintain accurate and complete medical records, in violation of Tennessee regulations. She further found that the evidence clearly established that Orusa's prescriptions to the agent and the other five patients were outside the usual course of professional practice and beneath the standard of care. Finally, the Administrator found that Orusa's answer to the question on his renewal application was materially false.

The Administrator determined that the government had sustained its burden of proof as to the material-falsification allegation. The Administrator also determined that Orusa's continued registration was not in the public interest because Orusa had repeatedly issued prescriptions in violation of federal and state law. She found that Orusa, whose misconduct she considered egregious, had failed to show that he could be entrusted with a registration. Accordingly, the Administrator revoked Orusa's Tennessee-based DEA registration, denied any pending applications for renewal or modification of that registration, and denied Orusa's pending application for a new Kentucky-based registration.

Orusa timely petitioned for review.

II

Under federal law, every person who dispenses controlled substances must obtain a registration from the Attorney General. 21 U.S.C. § 822(a)(2); 21 C.F.R. §§ 1301.11–.12. As a condition of registration, registrants must be authorized to dispense controlled substances under applicable state law. 21 U.S.C. §§ 823(g)(1), 824(a)(3); *see also id.* §§ 802(21), 823(l); 42 U.S.C. § 1395x(r). Controlled substances are generally available only pursuant to a written, nonrefillable

prescription, 21 U.S.C. § 829, which, "to be effective[,] must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice," 21 C.F.R. § 1306.04(a). State law and professional standards determine whether prescriptions satisfy this requirement. *See Gonzales v. Oregon*, 546 U.S. 243, 270–71 (2006); *Akhtar-Zaidi v. DEA*, 841 F.3d 707, 711 (6th Cir. 2016) (per curiam); *Volkman v. DEA*, 567 F.3d 215, 223 (6th Cir. 2009).

The Attorney General has delegated to the Administrator of the DEA the authority to revoke certificates of registration. 28 C.F.R. § 0.100(b). The Administrator may revoke a registration upon finding that the registrant "has materially falsified any application filed" with the DEA, 21 U.S.C. § 824(a)(1), or "has committed such acts as would render his registration . . . inconsistent with the public interest," *id.* § 824(a)(4).[1] In determining the public interest, the agency must consider:

(A) The recommendation of the appropriate State licensing board of professional disciplinary authority.
(B) The applicant's experience in dispensing, or conducting research with respect to controlled substances.
(C) The applicant's conviction record under Federal or State laws relating to the manufacture, distribution, or dispensing of controlled substances.
(D) Compliance with applicable State, Federal, or local laws relating to controlled substances.
(E) Such other conduct which may threaten the public health and safety.

*Id.* § 823(g)(1);[2] *see id.* § 824(a)(4). The Administrator "need not make explicit findings as to each [factor] and can give each factor the weight he determines is appropriate.'" *Akhtar-Zaidi*, 841 F.3d

---

[1] Applications for registration are evaluated using the same criteria as revocations. *See* 21 U.S.C. § 823(a); *Volkman*, 567 F.3d at 219 n.1 (citing 21 C.F.R. § 1301.51(c)). While 21 U.S.C. § 824(a) appears to permit the Attorney General only to "suspend[] or revoke[]" an existing registration if the registrant has materially falsified an application, long-standing agency precedent also allows the Administrator to consider material falsehoods in deciding whether to deny applications for registration in the first place. Settles, 81 Fed. Reg. 64,940, 64,945 (DEA 2016).

[2] The version of the statute that was in force during the administrative proceedings listed the relevant public-interest factors in § 823(f), but the language of the subsection has not changed.

at 711 (quoting *Volkman*, 567 F.3d at 222) (cleaned up). The government has the burden of proving that the requirements for revocation are satisfied. 21 C.F.R. § 1301.44(e).

The Administrator's decision to revoke a registration will be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of review under this standard is narrow, and we require only a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). The agency's factual findings are conclusive if supported by substantial evidence, 21 U.S.C. § 877, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938).

## III

Orusa's petition for review does not challenge the agency's denial of his application for a new registration under his Kentucky license. Accordingly, our review is limited to the agency's revocation of Orusa's Tennessee registration.

Nor does Orusa challenge the Administrator's finding that he materially falsified his application for registration, a finding that justifies the revocation of his registration and denial of his pending applications even without proof of any other misconduct. 21 U.S.C. § 824(a)(1); *see, e.g.*, Toret, 82 Fed. Reg. 60,041, 60,043 (DEA 2017).[3] Orusa's failure to challenge this alternative basis

---

[3] The Administrator did not explain the relationship between her falsification and public-interest determinations. The ALJ's recommended decision contained a longer discussion of the falsification charge, which specified that falsification alone was sufficient grounds for denying an application or revoking a registration. While the final paragraph of the ALJ's recommendation, which the Administrator adopted, does not refer back to the falsification charge, the Administrator's order differs in that it references her authority under 21 U.S.C. § 824(a), which includes both grounds for revocation.

for the Administrator's decision is fatal to his petition because even if Orusa were successful in challenging the other grounds that the Administrator gave for revoking his registration, we would be bound to deny his petition for review.

But substantial evidence also supports the Administrator's determination that Orusa's actions rendered his continued registration inconsistent with the public interest. The Administrator's decision was based on her findings under the second and fourth statutory public-interest factors—Orusa's dispensing experience and compliance with applicable law. A reasonable mind would accept the evidence in the record as adequate to support these findings. Orusa's conduct, as evaluated by the government's expert, fell far short of his obligations under state and federal law: his record-keeping was shoddy, his examinations of his patients were cursory in the extreme, and he did far too little to guard against the risk of abuse. The evidence that the government presented at the hearing supports its characterization of Orusa as a "willing enabler of drug abuse and diversion" and refutes Orusa's claim that he acted as a diligent and conscientious medical professional.

Instead of arguing that the record does not support—or indeed compels reversal of—the Administrator's findings, Orusa offers only conclusory assertions, pointing to his many years of experience in pain management and baldly stating that he "scrupulously exercised due diligence in his efforts to comply with all applicable laws."[4] These claims are insufficient for us to reverse the Administrator's well-supported findings. *See* 21 U.S.C. § 877.

Orusa also misunderstands what the statute requires. In considering the second public-interest factor, dispensing experience, the agency considers "both the qualitative manner and quantitative volume of the [practitioner's] experience . . . as expressed through his patients and

---

[4] To the extent that Orusa challenges the Administrator's decision as arbitrary and capricious for failing to make explicit findings as to each public-interest factor, our precedent squarely forecloses his argument. *Akhtar-Zaidi*, 841 F.3d at 711.

employees." Pettinger, 78 Fed. Reg. 61,592, 61,619 (DEA 2013); *see also* John J. Mulrooney, II & Andrew J. Hull, *Drug Diversion Administrative Revocation and Application Hearings for Medical and Pharmacy Practitioners: A Primer for Navigating Murky, Drug-Infested Waters*, 78 Alb. L. Rev. 327, 343–46 (2015). Accordingly, Orusa's credentials and years of work experience, which the agency acknowledged, do nothing to disturb the agency's detailed review of his prescribing history— the relevant "experience in dispensing . . . controlled substances." 21 U.S.C. § 823(g)(1)(B). And the fourth factor required the Administrator to consider Orusa's "[c]ompliance with applicable . . . laws," not merely his diligence in attempting to comply. *Id.* § 823(g)(1)(D); *cf. Med. Shoppe-Jonesborough v. DEA*, 300 F. App'x 409, 411–12 (6th Cir. 2008) (rejecting human error and the absence of deliberate diversion as excuses for failing to comply with the statute).

Orusa's main argument for remand is that the agency's decision conflicts with the Supreme Court's intervening decision in *Ruan v. United States*, 142 S. Ct. 2370 (2022). But *Ruan* does not change the outcome in Orusa's case. To the extent that *Ruan* applies at all, it strengthens the agency's position, not Orusa's.

*Ruan* dealt with 21 U.S.C. § 841, which makes it a crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." 142 S. Ct. at 2376 (alterations in original). The regulation defining an authorized prescription is the same regulation that the agency relied on in this case, 21 C.F.R. § 1306.04(a), which requires that prescriptions "be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." The Court held that the statute's mens rea element applied to the "except as authorized" clause, meaning that, to obtain a conviction under 21 U.S.C. § 841, the government "must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Id.* at 2375.

Orusa argues that *Ruan* established a "new standard" that requires the agency to consider whether registrants "reasonably believed" or "subjectively intended" that the prescriptions they were issuing were authorized—rather than considering only whether the prescriptions were, in fact, authorized. The agency counters that the mens rea requirement of 21 U.S.C. § 841 does not apply in the context of Orusa's administrative adjudication.

The agency is correct. *Ruan* required the government to prove that the defendant "knowingly and intentionally" issued unauthorized prescriptions because of the explicit mens rea requirement in the criminal statute. *See id.* at 2377. But the statutory and regulatory provisions that govern civil revocation proceedings like this one contain no such requirement. *See* 21 U.S.C. §§ 823(g); 824(a); 21 C.F.R. § 1306.04(a). Moreover, *Ruan* emphasized that 21 C.F.R. § 1306.04(a) defined the scope of a doctor's prescribing authority "by reference to *objective* criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'" 142 S. Ct. at 2382 (emphasis added) (quoting 21 C.F.R. § 1306.04(a)). Orusa's argument that *Ruan*, which interpreted a different, criminal statute and explicitly stated that the criteria in § 1306.04(a) were objective, requires the DEA to inquire into his reasonable belief or subjective intent, fails.

IV

The Administrator found that Orusa materially falsified his application. Orusa does not challenge this finding, which independently justifies the Administrator's decision to revoke his registration and deny his pending applications. Substantial evidence also supports the Administrator's determination that Orusa's continued registration is inconsistent with the public interest. We **DENY** the petition for review.